[No. B057444. Second Dist., Div. Seven. Apr. 16, 1992.]

EZRA KATZIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and JANEE
GUERRA, Respondents.

Neal C. Tenen for Petitioner.

Graiwer & Goldberg and Michael Goldberg for Respondents

## Opinion

**LILLIE, P. J.**—Petitioner, Ezra Katzin, doing business as Professional Designers Company, petitioned for a writ of review regarding an order by respondent Workers' Compensation Appeals Board (Board) denying Katzin's petition for reconsideration. Katzin had sought reconsideration of an order by the workers' compensation judge (WCJ) that Katzin pay approximately $15,400 in medical-legal expenses incurred by applicant, Janee Guerra. We issued a writ of review, and the Board has filed its return.

In the application, it had been alleged that applicant sustained a specific industrial injury to the right upper extremity. We conclude Katzin was denied due process because he did not receive notice that applicant was claiming she sustained other industrial injuries. We further conclude Katzin was denied due process because he did not receive adequate notice regarding most of the medical-legal lien claims and did not receive many of the medical reports. We therefore annul the Board's order.

### Facts

Applicant filed and served on Katzin an application in which she alleged she sustained an industrial injury to her right upper extremity on November 29, 1988, during her employment by the Professional Designers Company. She later filed and served on Katzin an amended application alleging that Katzin was the employer and that he did business as Professional Designers. Katzin had no workers' compensation insurance.

Although the sole injury alleged was to the right upper extremity, applicant incurred substantial medical-legal expenses regarding her back, neck, stomach, liver, gallbladder, and neurological and psychiatric conditions. The notices and requests for allowance of lien filed as to the various medical-legal lien claims were on Division of Industrial Accidents forms containing language that "[t]he undersigned declares that he delivered or mailed a copy of this lien claim to each of the above-named parties." On each of the forms Katzin or the Professional Designers Company is listed as the employer. However, most of the forms are unsigned. Moreover, the statements attached to the forms are addressed either to applicant's attorney, the Board, or the Uninsured Employers Fund (UEF) and do not indicate service of the statements was made on the employer. In his petition for reconsideration, Katzin asserted the sole medical report obtained by applicant that was served on him was by Dr. Leonore C. Limos, a neurologist.

In a letter to the Board dated April 8, 1989, applicant's attorney requested that UEF be joined as a defendant. In the letter counsel also stated: "By copy

of this letter, . . . copies of all medical records are being served on Uninsured Employers Fund." Although the letter lists Katzin as a party being served with a copy of the letter, Katzin asserts in his verified petition for writ of review that the reports were not served on him.

On May 3, 1989, UEF was joined as a defendant. UEF obtained two defense medical reports, one by an orthopedist and one by a psychiatrist. Both reports were served on Katzin. Each report contains a summary of the medical reports obtained by applicant. The orthopedist concluded applicant sustained an industrial back injury that resulted in no permanent disability. The psychiatrist concluded applicant did not sustain an industrial psychiatric injury.

In February 1990 applicant filed a declaration of readiness. She served the declaration of readiness on UEF, but did not serve Katzin. The Board notified applicant and UEF that a pretrial conference would be held on April 11, 1990. Although UEF is not an insurance company (Lab. Code, § 3716), the notice of the conference bears the following language: "Notice to insured employer: Your attendance at this hearing may not be necessary. Please check with your insurance company." The Board's official service record for the notice of the pretrial conference lists the addresses of applicant, her attorney, and UEF. The employer's address is not listed, and the minutes of the pretrial conference reflect that the only appearances at the conference were by applicant and UEF. At the pretrial conference, applicant amended her application, claiming that on November 29, 1988, she sustained industrial injuries to her right hand, psyche, "internal," back, and neck. Issues were framed for trial, applicant and UEF listed their exhibits for trial, and the amounts of the lien claims were specified.

The Board's official service record for the notice of trial also does not list the employer's address. Neither Katzin nor UEF appeared at trial. In the petition for writ of review, however, Katzin does not assert he failed to receive notice of trial. Katzin states his reason for not appearing at the trial was his mistaken belief that UEF would represent his interests.

Applicant claimed at trial that on November 28 or 29, 1988, she sustained industrial injury to her right upper extremity, "internal parts," psyche, back, and neck.[1]

Applicant testified that on November 29, 1988, Katzin asked her to lift a box that weighed about 60 to 70 pounds. She complained it was too heavy,

---

[1]Although the minutes of hearing state applicant claimed the injuries occurred on November 28, applicant testified the date of injury was November 29, the same date alleged in her application and amended application.

but he insisted. As she started to lift the box, she felt back pain and dropped the box. Katzin then pushed the box toward applicant, and it landed on her right hand.

When applicant complained that her hand was injured, Katzin verbally harassed and swore at applicant. She cried and told him she was quitting. The next day she returned, but he refused to rehire her.

Applicant further testified that she developed pain in her stomach, upper abdomen, and lower chest while working for Katzin. She occasionally has back pain. She sometimes feels nervous, and she often has headaches that last for two to three hours.

The medical reports listed at the pretrial conference were received in evidence.

In reports dated December 2, 1988, and March 30, 1989, Dr. John Paul Jones, an internist, concluded applicant had anxiety, depression, insomnia, tension headaches, cervical and lumbar sprains or strains, and abdominal pains as a result of the November 29, 1988, incident or a cumulative industrial injury from October 1988 through November 29, 1988. He found she was temporarily totally disabled. He recommended a "[p]sychology consultation for stress reduction," an orthopedic referral, numerous laboratory tests, and some X-rays, including an "[u]pper GI x-ray with sonogram of the gallbladder." Dr. Jones later concluded applicant had industrially caused gastritis.

On March 7, 1989, Dr. Limos concluded applicant had "[m]uscle contraction headaches with migrainous features," cervical spasm and strain, anxiety, and depressive disorders as a result of cumulative industrial stress from October 1988 through November 29, 1988. Dr. Limos found applicant was temporarily totally disabled and needed further treatment. Dr. Limos recommended that applicant be evaluated by a psychiatrist, that she have X-rays of the neck, and that she undergo a computerized tomography scan of the head and an electroencephalogram. Dr. Limos later concluded applicant should be precluded from work involving undue emotional stress and will need further medical treatment.

Dr. Ralph W. Geise, an orthopedist, found applicant had headaches, a cervical strain, a shoulder strain, and a "musculoligamentous" strain of the thoracic and lumbar spines because of cumulative mental and physical industrial stress from October 1988 through November 29, 1988. Dr. Robert Higginbotham, the defense orthopedist, concluded applicant sustained an industrial lumbosacral strain that did not result in any permanent disability.

Drs. Myron Nathan and Roman Anshin, psychiatrists, concluded that applicant had never been permanently or temporarily totally disabled for psychiatric reasons and she did not need psychiatric treatment. They found, however, that psychological factors affected her gastrointestinal symptoms and head pain. Although the results of a psychological test were "essentially within normal limits," Drs. Nathan and Anshin noted the results were consistent with mild depression and anxiety.

On September 27, 1990, the WCJ issued a notice of intention to submit. The notice stated that all issues would stand submitted for decision on the record in 10 days, absent objection and a showing of good cause. The notice further stated that a copy of the minutes of the trial and a summary of evidence were attached and that the notice was served on "all parties on the [Board's] Official Address Record" on September 27, 1990. The minutes of the trial listed applicant's allegations as to the parts of her body she claimed were injured and a list of the lien claimants and the amounts of the lien claims.

In his petition for writ of review, Katzin asserts that he did not receive a copy of the notice of intention to submit and he also did not receive a copy of the summary of evidence. In a letter to the WCJ dated October 1, 1990, applicant's attorneys stated that, although they had received the notice of intention to submit, they did not receive the minutes of the trial and the summary of evidence. Counsel's letter was served on UEF but was not served on Katzin.

On December 3, 1990, the WCJ found that on November 29, 1988, applicant sustained industrial injuries to her back and right hand, that the injuries did not cause temporary disability, and that applicant was 1 percent permanently disabled as a result of the injury to her back. The WCJ imposed a penalty against Katzin for being willfully uninsured. The WCJ ordered Katzin to pay approximately $15,400 in medical-legal costs incurred by applicant to prove her case.

In her opinion, the WCJ stated that she did not receive any objection to the notice of intention to submit. The WCJ explained that she awarded the medical-legal costs because applicant's specific injury was considered a possible contributing cause for her headaches and internal complaints.

Katzin petitioned for reconsideration, contending that the medical-legal costs were unnecessary and unreasonable, that they were fraudulently in-curred, and that he was denied due process because he was not notified of various medical-legal expenses and he was not notified before trial that

applicant was claiming industrial injury to parts of the body other than the right upper extremity.

In her report on Katzin's petition, the WCJ stated that the full amount of the lien claims and the allegation of industrial injury to "internal parts," the psyche, the back, and the neck were set forth in the minutes, that the notice of intention to submit all issues on the record, absent objection, and the minutes were served on Katzin, and that no objection was received. The WCJ explained she concluded the medical-legal expenses were reasonably incurred because applicant claimed that stomach symptoms and headaches were caused in part by Katzin's abusive treatment of her on November 29, 1988. The WCJ recommended that the petition be dismissed because it was unverified or that reconsideration be denied because the order that Katzin pay applicant's medical-legal expenses was "based on a reasonable and fair evaluation of all the evidence and after notice had been given to [Katzin] of trial, of all the issues presented at trial with an opportunity to object to submission, and a copy of all pertinent medical evidence had been served on him." The WCJ also stated, however, that "[i]t is unclear which of applicant's medical reports were served on petitioner because no letter of transmittal is [sic] in the WCAB file shows service on petitioner." The WCJ concluded Katzin had adequate notice regarding the content of those reports, however, because one of the defense medical reports served on Katzin by UEF extensively reviewed applicant's medical evidence.

On February 20, 1991, the Board adopted the reasons stated by the WCJ in her report and denied reconsideration.

Katzin contends he was denied due process because he was not served with copies of the medical reports, the medical-legal lien claims, the notice of pretrial conference, the notice of intention to submit on the record, and the summary of evidence. He also contends that substantial evidence does not support the finding that the medical-legal costs awarded were reasonably and necessarily incurred. Applicant requests an award of attorney fees incurred in opposing the petition for writ of review pursuant to Labor Code section 5801.[2]

---

[2]Labor Code section 5801 provides in pertinent part: ". . . In the event the injured employee . . . prevails in any petition by the employer for a writ of review from an award of the appeals board and the reviewing court finds that there is no reasonable basis for the petition, it shall remand the cause to the appeals board for the purpose of making a supplemental award awarding to the injured employee or his attorney . . . a reasonable attorney's fee for services rendered in connection with the petition for writ of review. Any such fee shall be in addition to the amount of compensation otherwise recoverable and shall be paid as part of the award by the party liable to pay such award."

DISCUSSION

The record reflects that various rules of the Board and the Administrative Director of the Division of Workers' Compensation were violated. The Board's rules require that the Board serve notice of the time and place of all hearings, including pretrial conferences, on all parties. (Cal. Code Regs., tit. 8, ch. 4.5, §§ 10500, 10541, 10544.) For cases in which the injury occurred before 1990, the Board's rules also provide that, if a party was served with notice of a hearing but fails to appear, the Board may take the case off calendar, dismiss the proceeding, or hear the evidence and, after service of the minutes of hearing, summary of evidence, and a 10-day notice of intention to submit, make a just and proper decision. (Cal. Code Regs., tit. 8, ch. 4.5, § 10562.)

The Board's rules further require that, when a declaration of readiness is filed, the declarant must serve all parties with copies of all relevant medical reports in his possession or under his control. (Cal. Code Regs., tit. 8, ch. 4.5, § 10608 [rule 10608].) Section 9785 of the rules of the Administrative Director of the Division of Workers' Compensation requires any employee-selected treating physician to serve a report on the employer within five working days after the initial examination. (Cal. Code Regs., tit. 8, ch. 4.5, § 9785.) Section 10622 of the Board's rules provides in pertinent part: "Disclosure, service and filing of all medical reports in the possession and control of every party to a proceeding, except as otherwise expressly provided, . . . is essential to and required in the expeditious determination of controversies. [¶] The Workers' Compensation Appeals Board may decline to receive in evidence . . . any report offered . . . by a party who has failed to comply with the provisions of [rule] . . . 10608 . . . ." (Cal. Code Regs., tit. 8, ch. 4.5, § 10622.)

Section 10770 of the Board's rules provides that all lien claims must be accompanied by a full statement or itemized voucher supporting the lien and that both the lien claim and the statement or voucher must be served on the employer. (Cal. Code Regs., tit. 8, ch. 4.5, § 10770.)

Each of these rules is intended to assure due process. In view of the employer's verified assertion that he did not receive copies of all the applicant's medical reports and the medical-legal lien claims before trial, the failure to list the employer's name and address on most of the statements, and the lack of any signature on most of the lien claims to attest to service on the employer, the record reflects that the employer was not served with copies of all the applicant's medical reports and the lien claims before trial.

The official service record of the notice of the pretrial conference supports Katzin's assertion that he was not served with notice of that conference. Although the WCJ asserts that a notice of intention to submit on the record and the minutes of trial were served on all parties, the record reflects that the applicant's attorney did not receive the minutes and summary of evidence along with the notice of intention to submit. Inasmuch as the official service records for the pretrial conference and trial do not list the address of Katzin or his business and the return contains no official service record for the notice of intention to submit, and given Katzin's verified assertion that he did not receive the notice of intention to submit and the summary of evidence, the sole reasonable inference on this record is that Katzin was not served with the notice of intention to submit, the minutes of trial, and the summary of evidence before the WCJ issued her decision.

 Because applicant had added new claims of industrial injuries at the pretrial conference and those additional claims were noted in the minutes of the trial, Katzin was severely prejudiced by the lack of notice of the pretrial conference and the lack of notice of intention to submit. Had Katzin known of these additional claims and of the full extent of the medical-legal lien claims before trial, he might have chosen to appear and contest the extensive medical-legal charges because he would have been aware the case was not limited to a relatively minor injury to applicant's hand. Had he received the notice of intention to submit and the minutes of trial and summary of evidence, he would have known UEF had not appeared at trial and applicant's testimony stood essentially uncontradicted. He would then have had an opportunity to challenge the approximately $15,400 in medical-legal lien claims, of which he had not been fully aware before trial, and to be heard on the newly framed issues as well.

 "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citation.]" (*Fortich* v. *Workers' Comp. Appeals Bd.* (1991) 233 Cal.App.3d 1449, 1452-1453 [285 Cal.Rptr. 222], internal quotation marks omitted.) Due process requires that all parties "must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. [Citations.]" (*Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1015 [163 Cal.Rptr. 339], internal quotation marks omitted.) Failure to serve Katzin with applicant's

medical reports, the lien claims, the notice of pretrial conference, the summary of evidence, and the notice of intention to submit on the record deprived him of due process. (*Ibid.*; *Fortich, supra,* at pp. 1452-1453; *Hartford Accident & Indem. Co.* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 1, 3 [149 Cal.Rptr. 878].) The Board's order denying reconsideration must therefore be annulled and the matter remanded to the Board for a new hearing on the necessity for and reasonableness of the medical-legal costs.[3]

In view of the lifting incident and the evidence that applicant complained she had headaches and abdominal pains after the employer harassed her, there is substantial evidence that at least some of the medical-legal expenses were necessarily and reasonably incurred. (Lab. Code, § 4621; *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Roberson)* (1963) 59 Cal.2d 842, 844 [31 Cal.Rptr. 477, 382 P.2d 597].) The record reflects, however, that some of the reports were duplicative. Because the matter will be remanded to the Board, we need not and do not decide whether the record supports the full amount of the medical-legal costs awarded.

■ Because we have concluded Katzin was denied due process, we will deny applicant's request for attorney fees under Labor Code section 5801.

### DISPOSITION

The February 20, 1991, order denying reconsideration by respondent Workers' Compensation Appeals Board is annulled, and the matter is remanded to respondent Workers' Compensation Appeals Board for further proceedings consistent with the views expressed herein.

The request of respondent Janee Guerra for attorney fees is denied.

---

[3]Since the Board adopted the reasoning in the WCJ's report without explanation, it is unclear whether the Board relied on the lack of verification when it denied reconsideration. Because failure to verify a petition may be cured by amendment (*United Farm Workers of America* v. *Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 915 [210 Cal.Rptr. 453, 694 P.2d 138]; *Wings West Airlines* v. *Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1055 [232 Cal.Rptr. 343]), and because there is a strong public policy in favor of hearing cases on the merits (*Litzmann* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 203, 205 [71 Cal.Rptr. 731]) and Katzin has established he was denied due process, any reliance by the Board on the lack of verification was error.

Petitioner, Ezra Katzin, shall recover his appellate costs.

Johnson, J., and Woods (Fred), J., concurred.