[Nos. B077475, B077476, B077478, B077479, B077480, B077481, B077482, B077485, B077486, B077487. Second Dist., Div. Three. July 7, 1994.]

BEVERLY HILLS MULTISPECIALTY GROUP, INC., Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, INTERNATIONAL RECTIFIER et al., Respondents.

**COUNSEL**

Dan Lispi for Petitioner.

Robert Feinglass and Nancy Roberts as Amici Curiae on behalf of Petitioner.

Nayfack & Mueller, James F. Mueller and Thomas J. McBirnie for Respondents.

Phillip N. Bruce, Carlyle R. Brakensiek, Catherine I. Hanson, Robert S. Siltanen, Haworth, Bradshaw & Chaney and C. Gordon Taylor as Amici Curiae upon the request of the Court of Appeal.

## OPINION

**CROSKEY, J.**—Petitioner, Beverly Hills Multispecialty Group, Inc. (BHMG), sought writs of review in 10 cases in which respondent Workers' Compensation Appeals Board (Board) affirmed orders denying BHMG's lien claims for medical treatment and medical-legal costs. In each case, the allegedly injured worker filed a claim form or application alleging a cumulative industrial injury after the worker's employment with respondent International Rectifier was terminated, and the workers' compensation judge (WCJ) found that the worker did not sustain a cumulative industrial injury.[1] We issued writs of review in each of the 10 cases and ordered the cases consolidated.

We conclude that BHMG was denied due process because in each of the 10 cases defense medical reports criticizing BHMG's evaluations, medical reports, and treatment were not served on BHMG before trial and that in most of the cases BHMG was denied due process because it did not receive notice before trial that fraud by BHMG was being alleged. In Clara Lewis's case (No. B077476), BHMG's attorney was not allowed to cross-examine a material witness. In James Jordan's case (No. B077482), after BHMG's attorney made several objections, he was not permitted to make any further objections. We conclude these procedural rulings also denied BHMG due process. Because BHMG was denied due process, we will annul the Board's decisions and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Barbara Pinkney, Clara Lewis, Erlinda Pascual, Annie Lee Harris, Severina Bass, Mildred Tramel, James Jordan, Claretta Johnson, Eleanor Drake, and Elizabeth Watts were employed by International Rectifier. After their employment was terminated, each worker filed a claim form or application alleging a cumulative industrial injury. The workers obtained evaluations,

---

[1] Each alleged cumulative injury period ended in 1990 or earlier. In some cases, the workers also claimed one or more specific industrial injuries, some of which were admitted by the employer. BHMG filed a joint petition for reconsideration in the underlying cases. BHMG's petition for reconsideration listed only the cumulative injury case numbers in the caption, and BHMG did not state in its petition for reconsideration that it was challenging the denial of any of its lien claims regarding any of the specific injury claims. In a footnote in the petitions for writ of review, BHMG mentions an admitted specific industrial injury. However, BHMG's petitions for writ of review do not expressly challenge the denial of BHMG's lien claims regarding the specific injury claims. Any contention that the Board erred in denying BHMG's lien claims in the specific injury cases has, therefore, been waived. (Lab. Code, § 5904; *Cedillo v. Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 455-456 [96 Cal.Rptr. 471, 487 P.2d 1039].)

medical reports to prove their claims, and treatment from clinics owned by BHMG. In each case, the employer and insurer Argonaut Insurance Company (Argonaut)[2] filed an application or declaration of readiness requesting a hearing to determine what liability, if any, they might have.[3] The employer and Argonaut obtained medical reports criticizing the BHMG doctors' treatment, evaluation methods, and conclusions. In some of the defense medical reports, it was asserted that the workers' claims or supporting reports were fraudulent. None of the defense medical reports was served on BHMG before trial.[4]

In each case, the minutes of the trial list fraud as an issue. However, in declarations attached to the petitions for writ of review, BHMG's attorney asserts that he first learned that fraud was raised as an issue when WCJ Frank Falero, the WCJ in each of the consolidated cases, recused himself in another case, mentioning that each of the consolidated cases was a potential workers' compensation fraud case. Shortly thereafter, BHMG appeared at James Jordan's trial on October 27, 1992, the second day of trial.[5]

The record reflects that the Board did not send notices of the mandatory settlement conferences to BHMG. At some of the settlement conference proceedings, fraud was listed as an issue. The record does not reflect whether minutes of those proceedings were served on BHMG.[6]

In some of the cases, the record does not contain a list of those parties and lien claimants whom the Board served with notice of trial. The record indicates that in some cases the Board did not serve BHMG with notice of trial and that in other cases the Board first served BHMG with notice of trial after the first day of trial had been completed.[7]

In Mr. Jordan's case, BHMG's attorney, Dan Lispi, once interrupted the WCJ during the WCJ's questioning of Mr. Jordan and once interrupted Mr.

---

[2]In workers' compensation proceedings, the employer and any workers' compensation insurer are properly characterized as defendants.

[3]In Eleanor Drake's case (No. B077486), Travelers Insurance Company was the workers' compensation insurer for part of the alleged cumulative industrial injury period, and Argonaut was the insurer for the rest of that period. In each of the other cases, Argonaut was the sole workers' compensation insurer.

[4]BHMG has asserted that it was not served with any of the defense medical reports before trial, and the defendants have not disputed this assertion.

[5]Trial in Mr. Jordan's case was held on September 11, 1992, October 27, 1992, and November 17, 1992.

[6]In Ms. Pascual's case (No. B077478) and Ms. Harris's case (No. B077479), the summary of settlement conference proceedings listed fraud as an issue. In Ms. Drake's case (No. B077486), the employer's mandatory settlement conference statement listed fraud as an issue. The record does not reflect that the employer's mandatory settlement conference statement was served on BHMG.

[7]In Ms. Pinkney's case (No. B077475) and Ms. Lewis's case (No. B077476), the record does not reflect that the Board served BHMG with notice of trial until after the first day of

Jordan's testimony, contradicting Mr. Jordan. After the latter interruption, the WCJ ordered Mr. Lispi to leave the hearing room, and the trial proceedings continued in Mr. Lispi's absence. Some of Mr. Jordan's testimony, while Mr. Lispi was outside the hearing room, concerned treatment that Mr. Jordan obtained at BHMG. After Mr. Lispi was allowed to return to the hearing room, he made two objections, both of which were sustained. When he made a third objection, Mr. Jordan's attorney asked the WCJ to determine whether it was appropriate for a lien claimant's attorney to make any objections. The WCJ ordered Mr. Lispi not to make any further objections.

During the questioning of Mr. Jordan, defense counsel asserted that Dr. Showghy, a BHMG psychiatrist, had billed the employer and Argonaut for an initial examination exceeding four hours, and defense counsel elicited testimony from Mr. Jordan that the initial examination by Dr. Showghy was one and one-half hours long. Mr. Lispi commented that he did not see any statement by Dr. Showghy asserting that Dr. Showghy saw Mr. Jordan for four hours. After defense counsel showed Mr. Lispi the bill on which he relied for his assertion that Dr. Showghy was claiming that the examination exceeded four hours, the WCJ warned Mr. Lispi not to make any further comments. Mr. Lispi did not make any further objections or comments at the trial that day and did not appear on the last day of trial in Mr. Jordan's case.

Several days after BHMG appeared at the trial in Mr. Jordan's case, BHMG appeared in Clara Lewis's case on November 4, 1992, the last day of trial.[8] BHMG's attorney, Mr. Lispi, was allowed to cross-examine Ms. Lewis and her supervisor, Shirley Wren. However, he was not allowed to cross-examine Robert Anderson, the vice-president of the human resources department. Mr. Anderson had conducted Ms. Lewis's exit interview. BHMG did not appear at the trials of any of the other workers.

The WCJ found that the workers did not sustain cumulative industrial injuries. He found conspiracies by the workers, their attorneys or representatives, BHMG, and BHMG's clinics to commit fraud. He denied all lien claims as products of the workers' deception and denied BHMG's lien claims for the additional reason that he found BHMG's lien claims were products of BHMG's conspiracy to commit fraud. He ordered the workers to

trial was completed. In Ms. Bass's case (No. B077480), Mr. Jordan's case (No. B077482), Ms. Johnson's case (No. B077485), and Ms. Drake's case (No. B077486), the record does not reflect that the Board sent any notice of trial to BHMG. In Ms. Harris's case (No. B077479), the Board served a BHMG clinic with a notice of rescheduling of trial and a subsequent notice of trial. In Ms. Watts's case (No. B077487), the Board served BHMG with the notices of trial.

[8]Trial in Ms. Lewis's case was held on July 13, 1992, September 14, 1992, and November 4, 1992.

reimburse the employer and Argonaut for their defense costs and ordered the employer and Argonaut to report the conspiracy to commit fraud findings to the Bureau of Fraudulent Claims in the Department of Insurance and to request prosecution by any government agency. He stated that BHMG's bills in the 10 cases totalled $157,906.50 and that the total defense cost was $62,047.49.

The workers and BHMG petitioned for reconsideration. The Board denied the workers' petitions and granted BHMG's petition. The Board determined that substantial evidence supported the findings that the workers did not sustain cumulative industrial injuries. The Board rescinded the findings of conspiracy to commit fraud and instead found that the workers' claims of cumulative industrial injury were fraudulent. The Board rescinded the remaining findings and denied the lien claims for medical treatment. The Board stated that the lien claims for treatment were properly denied because only expenses for treatment for industrial injuries may be reimbursed. The Board found that BHMG's medical reports were worthless and denied BHMG's lien claims for medical-legal costs. The Board returned the matters to the WCJ for further proceedings on the issue of reimbursement of defense costs.

The Board stated that, because the WCJ found that the allegedly injured workers were not worthy of belief and the evaluating doctors at BHMG recommended unnecessary diagnostic tests and treatment, the WCJ did not err in finding the claims were fraudulent. The Board stated that medical-legal costs were denied because they were neither reasonably nor necessarily incurred. The Board stated that, because BHMG's medical reports were based on false histories, unnecessary tests, and medical conditions not related by the workers, the reports were in essence not prepared in good faith. The Board determined that the WCJ properly disallowed the medical-legal charges because BHMG's evaluation procedures and methodology were so inadequate as to be unreasonable and the BHMG doctors' conclusions were completely lacking in credibility.

The Board stated, however, that it was necessary to rescind the findings of conspiracy to commit fraud because of due process concerns about notice and an opportunity to be heard. The Board stated that the records did not support the orders to reimburse defense costs because no evidence was received on that issue. The Board also stated it could not discern why only the workers and not also their representatives and BHMG were found liable for reimbursement of defense costs. The Board stated that, if the WCJ again orders reimbursement, the WCJ should provide notice to all parties, hold

hearings at which the parties may be heard, and specify the basis for any order of reimbursement, the party or parties to make reimbursement, and the basis for determining the amount to be reimbursed.[9]

## ISSUES AND CONTENTIONS

 The central issue in these consolidated matters is whether BHMG was denied due process because it was not served with the defense medical reports before trial. BHMG also contends that it was denied due process because its attorney was not permitted to cross-examine a witness at Ms. Lewis's trial and to make objections at Mr. Jordan's trial; BHMG was not provided with notice that fraud, at least involving allegations against BHMG, would be an issue at trial; and BHMG had no opportunity to conduct discovery before trial.[10] Thus, we are presented with the question whether a medical or medical-legal lien claimant has the right to participate in the hearing in the worker's case-in-chief and, if so, to what extent.

BHMG asserts that the Board erred in denying BHMG's lien claims for medical treatment and medical-legal costs in view of language in Labor Code section 4603.2 and Labor Code former sections 4622 and 4625 and that substantial evidence does not support the denial of the lien claims.[11] BHMG appears to contend that substantial evidence does not support the findings of no cumulative industrial injury and of fraud by the workers. BHMG argues that the Board did not give adequate reasons for its decisions since the Board did not state which parts of the workers' histories were

[9]Because of the Board's remand order, we need not and do not determine whether BHMG could be held liable for the defense costs. The order requiring the workers to pay defense costs was probably based on Labor Code section 5811, which provides that costs as between the parties may be allowed by the Board. The Legislature recently enacted Labor Code section 5813, which provides: "(a) The workers' compensation referee or appeals board may order a party, the party's attorney, or both, to pay any reasonable expenses, including attorney's fees and costs, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. In addition, a workers' compensation referee or the appeals board, in its sole discretion, may order additional sanctions not to exceed two thousand five hundred dollars ($2,500) to be transmitted to the General Fund. [¶] (b) The determination of sanctions shall be made after written application by the party seeking sanctions or upon the appeal board's own motion. [¶] (c) This section shall apply to all applications for adjudication that are filed on or after January 1, 1994."

[10]Although BHMG requests that this court state that BHMG is entitled to conduct discovery, BHMG has not provided this court with a copy of any order denying discovery and the Board's certified records do not contain such an order in any of these cases. That issue is, therefore, not properly before this court.

[11]Medical-legal costs are medical and interpreter costs incurred to prove or disprove a contested claim. (Lab. Code, § 4620, subd. (a).)

fraudulent, which tests were unnecessary, which conditions that BHMG treated or evaluated were not related by the workers, and what evaluation procedures and methodologies were inadequate and did not sufficiently explain its reasons for so finding. To assist us in resolving these issues, we solicited amicus curiae briefs from several organizations.[12]

## DISCUSSION

In *Soils* v. *Swift Transportation Co.* (1978) 43 Cal.Comp.Cases 83 (in bank), the Board indicated that a lien claimant may have a right to participate in the trial but that the lien claimant's participation may not necessarily benefit the worker. In that case, the Employment Development Department appeared as a lien claimant at the trial of the worker's case-in-chief, but the lien claimant's representative merely observed the trial and took no active role in the proceedings.

In deciding that the lien claimant was not a passive beneficiary of the worker's attorney's efforts and thus was not required to pay an attorney fee to the worker's attorney, the Board in *Soils* stated: "Contrary to the workers' compensation judge, we find that the mere fact that the Department's

---

[12]We requested that counsel for the California Medical Association (CMA), California Applicants' Attorneys Association (CAAA), California Society of Industrial Medicine and Surgery, Inc. (CSIMS), and California Workers' Compensation Institute (CWCI) brief the following: "1. Does the medical or medical-legal lien claimant have a due process right (whether supported by statutory or constitutional authority) to participate in the hearing of the worker's case-in-chief? If so, what is the scope of that right? May the lien claimant fully participate in order to protect its own interests, even though such interests may not coincide with those of the worker? [¶] 2. Assuming there was a denial of due process to the lien claimant, should such denial be reversible per se or should it be determined under the prejudicial error standard? [¶] 3. What public policy considerations should guide the court's resolution of these issues?" We also granted permission for Boehm and Associates to file an amicus curiae brief addressing these issues.

CAAA, CMA, CSIMS, and Boehm and Associates contend that the lien claimant has a due process right to participate in the hearing in the worker's case-in-chief. CAAA and CSIMS contend that denial of the lien claimant's right to cross-examine witnesses, make objections, or participate in the hearing is reversible per se. Boehm and Associates contends that denial of a medical lien claimant's right to participate actively in the proceedings is reversible per se if the denial was intentional. CMA contends that denial of the lien claimant's due process rights is reversible only if the error was prejudicial. CMA asserts that denial of the lien claimant's right to participate in the trial of the worker's case-in-chief may result in denial of a legitimate lien claim, particularly if the other benefits to which the worker may be entitled are relatively small. CMA argues that denial of the lien claimant's right to participate in the trial of the worker's case-in-chief may ultimately result in the inability of many industrially injured workers to obtain medical treatment. CWCI contends that the lien claimant has no right to participate in the hearing in the worker's case-in-chief because the lien claimant's right to the claimed lien is inchoate and Board proceedings should be conducted expeditiously.

representatives took no active role in the proceedings does not make lien claimant a passive beneficiary. The proceedings of the Workers' Compensation Appeals Board are geared to expedite benefits to the applicant. If a determination is to be made that the lien claimant must actively litigate in the courtroom, the Department will have no other course but to take an extremely active role in the actual litigation of cases. The Department's representative, to protect the record, would cover the same ground which applicant's counsel had previously covered in questioning the applicant. In addition, the Department's representatives would feel that they must cross-examine other witnesses in order to preserve their active status." (*Soils* v. *Swift Transportation Co.*, *supra*, 43 Cal.Comp.Cases at p. 85.)

In *Dressler* v. *Workers' Comp. Appeals Bd.* (1981) 127 Cal.App.3d 292 [179 Cal.Rptr. 419], two insurers, which were represented by Lien Services, filed lien claims in a workers' compensation case. The lien claimants' attorney appeared at the trial of the worker's case-in-chief but did not introduce any evidence beyond the filed liens, did not examine or cross-examine any witness, and made no argument. Division Four of this court held that the lien claimants participated sufficiently to insulate them from responsibility for any fee payable to the worker's attorney. (*Id.* at p. 294.) The court stated: "In this case, it developed that no opposition to the liens arose—the hearing being devoted only to the employer's contention that the injury was not industrially caused. However, a lien claimant cannot be sure, prior to the hearings, that its lien will be allowed in full if the worker secures an award. It is entitled to have its own attorney present in the event that its claim is attacked, either in amount or in full. . . ." (*Ibid.*)

In *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (*Kause*) (1979) 91 Cal.App.3d 507 [154 Cal.Rptr. 768], a medical lien claimant did not receive notice of the sole hearing on the worker's claim. The WCJ allowed the lien claim and ordered the lien claimant to pay an attorney fee to the worker's attorney, and the Board affirmed the WCJ's decision. We annulled the attorney fee award, stating that the lien claimant was entitled to notice of the hearing so that it could decide whether it wanted to participate actively in the hearing. (*Id.* at p. 511.)

Labor Code section 5900 provides that any person aggrieved directly or indirectly by a WCJ's final decision may petition for reconsideration. Lien claimants whose liens are denied because of an adverse finding on a threshold matter are indirectly aggrieved persons. (See Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) Reconsideration, § 10.5, p. 354.) A lien claimant's statutory right to petition for reconsideration because the lien

claimant is indirectly aggrieved by a finding of the WCJ implies a corollary right of the lien claimant to participate in the trial of the worker's case-in-chief.[13]

A medical lien claimant's right to participate in the worker's case-in-chief is implicit in Labor Code section 4903.2. Labor Code section 4903.2 provides: "Where a lien claimant is reimbursed pursuant to subdivision (f) or (g) of Section 4903 or Section 4903.1,[14] for benefits paid or services provided, the appeals board may award an attorney's fee to the applicant's

---

[13]We note that Labor Code section 4903.4, which was enacted in 1989 and amended in 1990, allows the Board to sever the hearing on the lien claim from the hearing on the compensability of the worker's claim. Labor Code section 4903.4 currently provides: "When a dispute arises concerning a lien for expenses incurred by or on behalf of the injured employee as provided by Article 2 (commencing with Section 4600) of Chapter 2 of Part 2, the appeals board may resolve the dispute in a separate proceeding, which may include binding arbitration upon agreement of the employer, lien claimant, and the employee, if the employee remains a party to the dispute, according to the rules of practice and procedure." As originally enacted, Labor Code section 4903.4 provided that the Board was required to resolve the lien dispute in a separate proceeding. (Stats. 1989, ch. 892, § 42, pp. 3031-3032.) In the present matters, there was no bifurcation.

[14]Labor Code section 4903.1 provides in pertinent part: "(a) The appeals board, arbitrator, or settlement conference referee, before issuing an award or approval of any compromise of claim, shall determine, on the basis of liens filed with it pursuant to subdivision (b) or (c), whether any benefits have been paid or services provided by a *health care provider*, a health care service plan, a group disability policy, including a loss of income policy, a self-insured employee welfare benefit plan, or a hospital service contract, and its award or approval shall provide for reimbursement for benefits paid or services provided under these plans as follows: [¶] (1) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, but denies the applicant reimbursement for self-procured medical costs solely because of lack of notice to the applicant's employer of his need for hospital, surgical, or medical care, the appeals board shall nevertheless award a lien against the employee's recovery, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care provider, a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract. [¶] (2) When the referee issues an award finding that an injury or illness arises out of and in the course of employment, and makes an award for reimbursement for self-procured medical costs, the appeals board shall allow a lien, to the extent of benefits paid or services provided, for the effects of the industrial injury or illness, by a health care provider, a health care service plan, a group disability policy, a self-insured employee welfare benefit plan, or a hospital service contract. . . . [¶] (4) When the parties propose that the case be disposed of by way of a compromise and release agreement, in the event the lien claimant, *other than a health care provider*, does not agree to the amount allocated to it, then the referee shall determine the potential recovery and reduce the amount of the lien in the ratio of the applicant's recovery to the potential recovery in full satisfaction of its lien claim. [¶] (b) When a compromise of claim or an award is submitted to the appeals board, arbitrator, or settlement conference referee for approval, the parties shall file with the appeals board, arbitrator, or settlement conference referee any liens served on the parties. [¶] (c) Any lien claimant under Section 4903 or this section shall file its lien with the appeals board in writing upon a form approved by the appeals board. The lien shall be accompanied by a full statement or itemized voucher supporting the lien and justifying the right to reimbursement and proof of

attorney out of the lien claimant's recovery if the appeals board determines that all of the following occurred: [¶] (a) The lien claimant received notice of all hearings following the filing of the lien and received notice of intent to award the applicant's attorney a fee. [¶] (b) An attorney or other representative of the lien claimant did not participate in the proceedings before the appeals board with respect to the lien claim. [¶] (c) *There were bona fide issues respecting compensability,* or respecting allowability of the lien, *such that the services of an attorney were reasonably required to effectuate recovery on the claim of lien* and were instrumental in effecting the recovery. [¶] (d) The case was not disposed of by compromise and release. [¶] The amount of the attorney's fee out of the lien claimant's recovery shall be based on the extent of applicant's attorney's efforts on behalf of the lien claimant. The ratio of the amount of the attorney's fee awarded against the lien claimant's recovery to that recovery shall not exceed the ratio of the amount of the attorney's fee awarded against the applicant's award to that award." (Italics added.)[15]

A medical lien claimant has no right to payment of its lien claim unless services rendered by the medical lien claimant were to cure or relieve the worker from the effects of an industrial injury. (Lab. Code, §§ 4600, 4903, subd. (b); *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.* (1974) 13 Cal.3d 20, 27 [117 Cal.Rptr. 678, 528 P.2d 766].)[16] A threshold finding that the worker sustained an industrial injury may be based on proof presented by the medical lien claimant.

In *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd., supra,* the surviving spouse of the worker entered into a compromise and release

---

service upon the injured worker, or if deceased, upon the worker's dependents, the employer, the insurer, and the respective attorneys or other agents of record. [¶] (d) The appeals board shall file liens required by subdivision (c) immediately upon request. Numbers shall be assigned pursuant to subdivision (c) of Section 5500." (Italics added.) Labor Code section 4903, subdivision (b), provides for appropriate medical and medical-legal lien claims to be allowed.

[15]In *Dressler* v. *Workers' Comp. Appeals Bd., supra,* 127 Cal.App.3d 292, the court did not cite Labor Code section 4903.2 or state when the hearing was held. Labor Code section 4903.2 was enacted in 1980, the year before *Dressler* was decided.

[16]Labor Code section 4603.2, subdivision (b), provides that payment for medical treatment provided or authorized by an industrially injured employee's treating physician shall be made by the employer within 60 days after receipt of each separate, itemized billing and any required reports. Section 4603.2, subdivision (b), also provides for a penalty if "[a]ny properly documented amount" is not paid within the 60-day period unless the employer pays an uncontested amount within the 60-day period and advises the medical provider of the items being contested, the reasons for contesting those items, and the remedies available to a provider that disagrees. In *Sharma* v. *CNA Cas. of Calif.* (1993) OAK 195740, 22 Cal. Workers' Comp. Rptr. 18, the Board concluded that Labor Code section 4603.2 applies only if there was an industrial injury.

with the employer's workers' compensation insurer, and the referee approved the compromise and release. In the order approving the compromise and release, the referee made no finding as to whether the worker's injury and death were industrially caused. The Supreme Court held that a valid lien for medical services may not be reduced solely because the issue of causation is complex. (13 Cal.3d at p. 28.)

The court explained: "If the board or the employee believes that the lien claim is disproportionately large in comparison with the employer's compromise offer, then either the compromise should be rejected, or the question of causation litigated [citations], or, as a further alternative, the cooperation of the lien claimant sought in order to effect a compromise under which the lien is voluntarily reduced." (13 Cal.3d at p. 28.)[17] In a footnote, the court stated: "[T]here exists 'great practical difficulty' in requiring a lien claimant to produce evidence of an industrial injury, 'where the employe who has first hand knowledge of those matters and the insurance carrier who has immediate opportunity to investigate them decline to produce such evidence and instead elect to compromise.' Accordingly, it is sufficient that the lien claimant establish a 'prima facie' case by submitting evidence that the lien arose by reason of services rendered the employee in connection with an injury or event for which the employee claimed and is awarded compensation under a compromise agreement. 'If there was to be any further showing as to the nature and period of the disability it should have come from the employe or the insurance carrier.' [Citation.]" (*Id.* at p. 28, fn. 8.)

In 1982, the Legislature enacted Labor Code section 3202.5, which provides that nothing contained in Labor Code section 3202 shall be construed as relieving a party from meeting the party's evidentiary burden of proof by a preponderance of the evidence.[18] Effective April 3, 1993, Labor Code section 3202.5 was amended to provide that a lien claimant also must meet its evidentiary burden of proof by a preponderance of the evidence that the statutory rule of liberal construction does not assist the lien claimant in meeting its burden. Labor Code section 3202.5, as recently amended, provides additional support that a medical lien claimant may litigate the threshold issue of industrial injury to establish its entitlement to recover on its lien claim.

Labor Code section 4620, subdivision (a), defines medical-legal expenses as meaning "any costs and expenses incurred by or on behalf of any party,

---

[17]After *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.*, *supra*, was decided, the Legislature enacted Labor Code section 4903.1, which is quoted, *ante*, at footnote 14.

[18]Labor Code section 3202 provides: "This division [division 4] and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

the administrative director, the board, or a referee for X-rays, laboratory fees, other diagnostic tests, medical reports, medical records, medical testimony, and, as needed, interpreter's fees, for the purpose of proving or disproving a contested claim." When the BHMG reports were written, Labor Code section 4621 provided in pertinent part: "[T]he employee . . . shall be reimbursed for his or her medical-legal expenses reasonably, actually, and necessarily incurred. . . ." (Stats. 1984, ch. 596, § 4, p. 2283.) ■ A finding of industrial injury is not necessary for an award of medical-legal costs. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 842, 844 [31 Cal.Rptr. 477, 382 P.2d 597] [construing Lab. Code, former § 4600, which defined medical-legal costs].)[19] If the employee did not give the examining doctors an honest history, an award of medical-legal costs may be denied. (*Guerrero* v. *General Motors Corp.* (1967) 32 Cal.Comp.Cases 203.)[20]

---

[19]When *Subsequent Injuries Fund* was decided, former Labor Code section 4600 provided that the employee would be reimbursed for expenses reasonably, actually, and necessarily incurred for X-rays, laboratory fees, medical reports, and medical testimony to prove a contested claim. (Stats. 1959, ch. 1189, § 9, p. 3279.) The court noted that a prior version of the statute had specified that only costs required to successfully prove the claim could be awarded and that in 1959 the Legislature had deleted the word "successfully." (*Subsequent Injuries Fund* v. *Industrial Acc. Com., supra*, 59 Cal.2d at p. 843.)

[20]Labor Code section 4622 provides that all medical-legal expenses "for which the employer is liable" shall, upon the employer's receipt of all necessary reports and documents, be paid "to whom the funds and expenses are due" within 60 days unless the employer contests the reasonableness and necessity for the fees or services within that period or the employer fails to make payment within 20 days after the filing of an order obtained by the employee or a deceased employee's dependents. Labor Code section 4622 so provided when BHMG's reports were written.

When the workers obtained evaluations and reports from BHMG, Labor Code former section 4624 provided that fees for initial comprehensive medical-legal reports by treating physicians or qualified medical evaluators were rebuttably presumed reasonable if the charges did not exceed certain specified amounts. (Stats. 1990, ch. 1550, § 32.) Labor Code former section 4625 provided in pertinent part: "[A]ll charges for initial comprehensive industrial medical-legal reports which are rebuttably presumed reasonable pursuant to Section 4624 shall be paid promptly pursuant to Section 4622. If the employer contests the reasonableness of the charges, the employer may file a petition with the appeals board to obtain reimbursement of the charges from the physician that are considered to be unreasonable." (Stats. 1990, ch. 1550, § 33.) Effective April 3, 1993, the Legislature repealed Labor Code section 4624 and amended Labor Code section 4625 to delete any reference to a rebuttable presumption of reasonable charges. (Stats. 1993, ch. 4, §§ 6, 7.) Also effective April 3, 1993, the Legislature amended Labor Code section 4622 to add subdivision (d), which provides: "Nothing contained in this section shall be construed to create a rebuttable presumption of entitlement to payment of an expense upon receipt by the employer of the required reports and documents. This section is not applicable unless there has been compliance with Sections 4620 and 4621." (Stats. 1993, ch. 4, § 4.)

Labor Code section 4903 provides in pertinent part: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). . . . The liens which may be allowed hereunder are as follows: . . . [¶] (b) The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 (commencing with Section 4600) and, *to the extent the employee is entitled to reimbursement under Section 4621*, medical-legal expenses as provided by Article 2.5 (commencing with Section 4620) of Chapter 2 of Part 2. . . ." (Italics added.) Labor Code section 4903 so provided when BHMG's reports were written. Although an employee need not necessarily establish an industrial injury to be entitled to medical-legal costs, Labor Code section 4903 makes a lien claimant's right to medical-legal costs derivative of the employee's rights. Thus, Labor Code section 4903 precludes an award to a medical-legal lien claimant who prepared a report in good faith if the worker fraudulently sought the report.

Because a lien claim for medical treatment or medical-legal costs may be denied if the worker's injury claim was fraudulent, it is important that a medical or medical-legal lien claimant be served with notice before trial in the worker's case-in-chief that fraud is alleged when the employer or its insurer is alleging fraud by the worker or the lien claimant. Here reimbursement of defense costs was sought based on alleged fraud by the workers and BHMG, the medical and medical-legal lien claimant. Proper notice that fraud by the workers and BHMG was being alleged was, therefore, especially important.

The Board's rules of practice and procedure require that the Board serve or cause lien claimants to be served with notice of all hearings. (Cal. Code Regs., tit. 8, §§ 10500, 10544, 10770, subd. (e) [rules 10500, 10544, & 10770(e)].) As this division has previously held, lien claimants are entitled to due process. (*Fox* v. *Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 1196, 1204-1205 [6 Cal.Rptr.2d 252].) We explained that it is obviously beneficial to industrially injured workers to have the rights of those providing them with professional services adequately observed and protected. (*Id.* at p. 1205.) " ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]" ' [Citation.]" (*Fortich* v. *Workers' Comp. Appeals Bd.* (1991) 233 Cal.App.3d 1449, 1452-1453 [163 Cal.Rptr. 339].) Thus, due process requires that a lien claimant be informed of the scope and purpose of a hearing that may affect its rights or liabilities. (See *Fidelity & Cas. Co. of*

*New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1015-1016 [163 Cal.Rptr. 339] [insurer denied due process by Board's failure to notify insurer of purpose of employee's examination by independent medical examiner].)

 In a declaration attached to the petition for writ of review, BHMG's attorney asserted that about October 27, 1992, he first learned that fraud by BHMG was being alleged when WCJ Falero recused himself in an unrelated case and mentioned that the underlying matters in each of these consolidated cases may have involved fraud. The record does not reflect that the Board served BHMG with notice that fraud by BHMG was an issue in any of these cases, and, although defendants dispute BHMG's assertion that it was unaware of the fraud allegations, none of the exhibits attached to the answers indicates that any party served such notice on BHMG. On October 27, 1992, the trials in several of these matters had already been completed, and trials had begun in some of these cases.[21] On this record, we must conclude that BHMG was not served with notice that fraud by BHMG was being alleged. This failure deprived BHMG of due process.

In *Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.*, *supra*, 103 Cal.App.3d at page 1015, the court stated: "Due process requires that ' "[a]ll parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense." ' [Citations.]" For the reasons previously discussed, we conclude that these rights also apply to medical and medical-legal lien claimants. The Board has recognized a lien claimant's right to due process in its rules of practice and procedure. California Code of Regulations, title 8, division 1, chapter 4.5, section 10500 (rule 10500) provides in pertinent part: ". . . No lien claim shall be disallowed or reduced unless the lien claimant has been given notice and an opportunity to be heard." The Board failed to comply with this regulatory due process requirement by disallowing BHMG's lien claims despite the failure to notify BHMG before trial in most of these cases that fraud by

---

[21]In Ms. Pascual's case (No. B077478), trial was held on September 10, 1992. In Ms. Watts's case (No. B077487), trial was held on July 13, 1992, and September 10, 1992. In Ms. Drake's case (No. B077486), trial was held on October 26, 1992. In Ms. Tramel's case (No. B077481), trial was held on July 13, 1992, and August 28, 1992. In Ms. Pinkney's case (No. B077475), the first day of trial was September 14, 1992. In Ms. Lewis's case (No. B077476), the first two days of trial were July 13, 1992, and September 14, 1992. In Ms. Johnson's case (No. B077485), the first day of trial was September 14, 1992. In Mr. Jordan's case (No. B077482), the first two days of trial were September 11, 1992, and October 27, 1992. In Ms. Bass's case (No. B077480), the first two days of trial were July 13, 1992, and September 11, 1992. In Ms. Harris's case (No. B077479), the trial was held on October 29, 1992.

BHMG was to be adjudicated at the trial and despite the WCJ's failure to allow BHMG to cross-examine a witness at Ms. Lewis's trial and his ruling that BHMG's attorney could not make objections at Mr. Jordan's trial. It is fundamental that undue infringement on the right of cross-examination is a denial of due process. (See *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 175 [93 Cal.Rptr. 15, 480 P.2d 967].) Counsel also has the right to make reasonable objections at trial. (See *Thompson* v. *Hickman* (1948) 89 Cal.App.2d 356, 365 [200 P.2d 893]; 3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 2010, p. 1968.)

California Code of Regulations, title 8, section 10609 (rule 10609) provides in pertinent part: "Copies of all physicians' reports shall be served on lien claimants whose liens for medical . . . benefits are proposed to be reduced or disallowed. Such service shall be made not later than the time such reduction or disallowance is proposed." Although rule 10609 does not so provide, copies of physicians' reports should also be served on lien claimants whose liens for medical-legal costs are proposed to be reduced or disallowed. Due process requires service of defense medical reports that criticize a lien claimant's evaluation procedures and conclusions since awareness of the contents of those reports is essential to provide the lien claimant with notice of the basis for the proposed reduction or disallowance of the lien claim.

Because the employer and Argonaut failed to serve BHMG with copies of the defense medical reports, BHMG was unaware of the evidence on which the employer and Argonaut would rely to support disallowance of BHMG's lien claims and was also unaware of the allegations of fraud contained in many of those reports. In addition to the denial of cross-examination in Ms. Lewis's case and the denial of the right to make objections in Mr. Jordan's case, this failure deprived BHMG of a fair trial in both of those cases.

Because the defense medical reports were not served on BHMG before trial, BHMG could not make a fully informed decision whether to appear at the trials in the other eight cases. In *Katzin* v. *Workers' Comp. Appeals Bd.* (1992) 5 Cal.App.4th 703, 711-712 [7 Cal.Rptr.2d 66], Division Seven of this court held that an employer was denied due process because before trial it was not served with lien claims, the worker's medical reports, and other documents that would have notified the employer of the extent of the worker's claims. For similar reasons, in the present matters, BHMG was denied due process by the failure to serve BHMG with the defense medical reports.

The workers have not petitioned for writs of review regarding the underlying matters in these consolidated cases. However, BHMG, as a lien

claimant that was indirectly aggrieved by the findings of fraud by the workers and the findings of the lack of any cumulative industrial injury, has contended in its reconsideration petition and the petitions for writ of review that the denial of due process to BHMG entitles BHMG to a new trial in each of the underlying matters on these threshold issues.

A denial of due process to a party ordinarily compels annulment of the Board's decision only if it is reasonably probable that, absent the procedural error, the party would have attained a more favorable result. (*Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 93 [95 Cal.Rptr. 447, 485 P.2d 799].) However, if the denial of due process prevents a party from having a fair hearing, the denial of due process is reversible per se. (See *Dvorin* v. *Appellate Dept.* (1975) 15 Cal.3d 648, 651 [125 Cal.Rptr. 771, 542 P.2d 1363] [summary judgment ordered without motion]; *Spector* v. *Superior Court* (1961) 55 Cal.2d 839, 843-844 [13 Cal.Rptr. 189, 361 P.2d 909] [judge refused to allow party to present any evidence or argument]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 364, p. 366.)

Because BHMG was denied due process by the failure to serve the defense medical reports, BHMG was denied a fair trial. The issue of whether denial of a fair trial to a lien claimant should be reversible per se or evaluated under the prejudicial error standard appears to be a matter of first impression. Although the California Constitution states that a goal of workers' compensation proceedings is to "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character . . . ." (Cal. Const., art. XIV, § 4), the right to due process is paramount to the goal of conducting workers' compensation proceedings expeditiously. We therefore conclude that denial of a fair trial to a lien claimant is reversible per se.

The Board's decisions after reconsideration must, therefore, be annulled and the matters remanded to the Board for new hearings to be held after BHMG has had an opportunity to review all the defense medical reports.

Because the matters will be remanded for new hearings, we need not and do not decide BHMG's contentions regarding substantial evidence and the sufficiency of the reasons for the Board's decisions. At the hearings, BHMG must be allowed to present relevant evidence, cross-examine witnesses, and make reasonable objections. BHMG may attempt to establish that cumulative industrial injuries were sustained and that, if they were not, the claims of cumulative industrial injury were not fraudulent since these are threshold

matters that are essential to establish any entitlement to payment of BHMG's lien claims. In any further decisions in these matters, the Board must state the evidence upon which it relies and specify in detail the reasons for its decisions, as required by Labor Code section 5908.5.

## DISPOSITION

Respondent Workers' Compensation Appeals Board's June 21, 1993, decisions after reconsideration are annulled, and the matters are remanded for further proceedings consistent with this opinion.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied August 2, 1994, and respondents' petitions for review by the Supreme Court were denied October 12, 1994.