[No. B144391. Second Dist., Div. Six. Aug. 2, 2001.]

KAREN KAIN et al., as Guardians, etc., Plaintiffs and Appellants, v. STATE DEPARTMENT OF HEALTH SERVICES, Defendant and Respondent.

**COUNSEL**

Andrew M. Wolf for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Susan A. Nelson, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**COFFEE, J.**—Welfare and Institutions Code section 14124.70 et seq., allows the state to place a lien on a settlement or judgment obtained by a

Medi-Cal beneficiary against a third party when Medi-Cal payments were used to treat an injury for which the third party is liable. We conclude that an award under the National Vaccine Injury Compensation Program (NVICP) (42 U.S.C. § 300aa-1 et seq.) is a judgment from which a Medi-Cal lien may be recovered.

### FACTS AND PROCEDURAL HISTORY

Lorrin Kain was born on March 15, 1994, and was seriously injured by a routine childhood vaccination. She suffers from a severe seizure disorder, spastic quadriplegia, scoliosis and cortical blindness, and will require extensive medical treatment throughout her life. Lorrin's parents, appellants Karen and Thomas Kain, have been appointed as her legal guardians.

In 1995, the Kains filed a petition in the United States Court of Federal Claims seeking recovery under the NVICP. They were represented by Attorney Andrew W. Dodd. The special master assigned to the case issued an award which included a lump sum payment of $841,174.65 and an annuity of over $3 million. The lump sum portion of the award included compensation for pain and suffering, lost earnings and unreimbursed medical expenses. Judgment was entered on March 13, 1998, after the Kains accepted the award on Lorrin's behalf.

In 1996, while the NVICP claim was still pending, Karen Kain applied for Medi-Cal to cover some of Lorrin's medical expenses. Lorrin ultimately received $111,184.13 in Medi-Cal benefits from the State Department of Health Services (DHS), the respondent in this appeal. The Kains did not inform DHS that they had filed a claim under the NVICP. The information about the Medi-Cal services was never presented to the Court of Federal Claims, and the NVICP award did not include an allowance for any of the expenses paid by Medi-Cal.

After judgment was entered in the NVICP action, Attorney Dodd informed DHS of the award. In response, DHS notified Dodd and the Kains that it would be seeking reimbursement for Medi-Cal benefits paid to Lorrin and was placing a lien on the money recovered under the NVICP.

The Kains then filed this action for declaratory relief, seeking a judicial determination of the parties' rights with respect to DHS's claim for reimbursement. The trial court trial ruled that DHS was entitled to seek reimbursement for Medi-Cal benefits and that its lien on the NVICP award was proper. It entered judgment in favor of DHS for $75,500.95, the net amount recoverable under the Medi-Cal lien. (See Welf. & Inst. Code, § 14124.72, subd. (d).)

DISCUSSION

. ■ The Kains contend that a Medi-Cal lien may be asserted only against a negligent third party tortfeasor or an insurance carrier that is contractually obligated to pay for services covered by Medi-Cal. They argue that the NVICP fits neither of these categories, and that the judgment in favor of DHS on its lien must be reversed. We disagree.

The NVICP was established by the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), and is a no-fault system for compensating individuals who are injured by routine vaccinations. (42 U.S.C. §§ 300aa-11(c), 300aa-13, 300aa-14, 300aa-15; *Lowry v. Secretary of Health and Human Services* (9th Cir. 1999) 189 F.3d 1378, 1381.) It requires a vaccine-injured person to file a petition in the United States Court of Federal Claims naming the Secretary of the Department of Health and Human Services as the respondent. (42 U.S.C. §§ 300aa-11, 300aa-12.) If the court determines that the claimant's injuries were caused by a vaccine, he or she will be awarded compensation out of the Vaccine Injury Compensation Trust Fund (Vaccine Fund), which is financed by an excise tax on certain vaccines. (26 U.S.C. § 9510; 42 U.S.C. § 300aa-15(i)(2); *Lowry, supra,* at p. 1381.) A claimant may either accept that award or reject it in favor of the right to pursue a traditional tort action against the vaccine manufacturer. (42 U.S.C. § 300aa-21.)[1]

Title XIX of the Social Security Act (42 U.S.C. §§ 1396-1396s), commonly known as Medicaid, is a cooperative federal-state program designed to provide medical assistance to persons whose resources are insufficient to meet the costs of medical care. (*Ruth v. Kizer* (1992) 8 Cal.App.4th 380, 385 [10 Cal.Rptr.2d 274].) Medi-Cal is the California implementation of the federal Medicaid program and is administered by DHS. (Welf. & Inst. Code, §§ 10721, 14000 et seq.; Cal. Code Regs., tit. 22, § 50004; *Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1687 [17 Cal.Rptr.2d 303].)

"Because Congress intended Medicaid to be the 'payor of last resort,' the state agency that administers Medicaid must seek reimbursement from any third party responsible for the patient's medical expenses." (*Sullivan v. County of Suffolk* (2d Cir. 1999) 174 F.3d 282, 285; *State of California v.*

---

[1]This system has salutary effects for vaccine-injured persons, vaccine manufacturers and the public at large. An injured person may recover from the NVICP fund without the burden of proving negligence by the party that manufactured the vaccine. Manufacturers are protected from the specter of large, uncertain tort liability and are better able to offer their products to the public for a reasonable price. (*Schafer v. American Cyanamid Co.* (1st Cir. 1994) 20 F.3d 1, 2.)

*Superior Court* (2000) 83 Cal.App.4th 597, 601, fn. 2 [99 Cal.Rptr.2d 735].) As a condition of receiving federal Medicaid funds, a state program must provide for the mandatory assignment of the beneficiary's rights against third parties and must obligate the state's Medicaid director to "take all reasonable measures to ascertain the legal liability of third parties." (42 U.S.C. § 1396a(a)(25)(A) & (a)(45); see also 42 C.F.R. § 433.138 (2000).) A "third party" is "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State [Medicaid] plan." (42 C.F.R. § 433.136 (2000).)

Consistent with these federal requirements, California has enacted several statutes allowing DHS to recover Medi-Cal funds from responsible third parties. Welfare and Institutions Code section 14124.71 authorizes DHS to bring an action for the reasonable value of Medi-Cal benefits paid "because of an injury for which another person [or entity] is liable. (*Riddell v. State of California* (1996) 50 Cal.App.4th 1607, 1611-1612 [58 Cal.Rptr.2d 555].) Welfare and Institutions Code section 14124.74 allows DHS a first lien against a "judgment or award in a suit or claim" obtained by a Medi-Cal beneficiary "against a third party or [insurance] carrier." By operation of law, the recipient of Medi-Cal services assigns to DHS the right to recover medical expenses from a third party who is liable to pay for those expenses. (Welf. & Inst. Code, § 14008.6, subd. (a).)

The Medi-Cal statutes do not define "third party" for purposes of reimbursement, but when construed with the relevant federal statutes and regulations, that term is broad enough to cover an award under the NVICP. The NVICP offers a no-fault substitute for tort recovery against vaccine manufacturers who, if held liable in a civil case, clearly would qualify as "third parties." Though the acts of the Vaccine Fund did not cause the claimant's physical injuries, it is the entity financially responsible for those injuries on behalf of the vaccine manufacturers.

Neither state nor federal law limits Medi-Cal reimbursement to third party *tortfeasors*, as the Kains suggest. State law broadly refers to the liability of "third parties," and to Medi-Cal services rendered because of an injury "for which another person or party is liable." (Welf. & Inst. Code, §§ 14124.70, subd. (b), 14124.74, 14124.791.) The federal regulations define a "third party" from whom reimbursement may be sought as "*any* individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance . . . ." (42 C.F.R. § 433.136 (2000), italics added.)

The Vaccine Act expressly contemplates that Medicaid funds are a secondary resource for vaccine injuries. In contrast to the general rule that the

NVICP will not pay for vaccine-related expenses covered by other insurance or state health care programs, Congress has specifically provided that the NVICP, rather than Medicaid, is the primary source of payment for such expenses. (42 U.S.C.A. § 300aa-15(g) & (h).)[2] This is consistent with Medicaid's status as a payor of last resort, which is available only when other funds are not.

In their briefs on appeal and in their arguments before the trial court, the parties appeared to agree that Lorrin's NVICP award would have included an amount sufficient to cover the Medi-Cal lien if information about that lien had been presented to the special master who heard their case in the Court of Federal Claims. At oral argument, counsel for the Kains argued that the Medi-Cal lien would not have been included in the NVICP award, citing two decisions by the same special master. The first of these decisions, *Banuelos v. Secretary of the Department of Health and Human Services* (Cl.Ct., Mar. 8, 1990, No. 89-25V) 1990 WL 293400 (*Banuelos*), rejected the claimant's request to order payment of a Medi-Cal lien as part of the NVICP award. The second, *Hussey v. Secretary of the Department of Health and Human Services* (Cl.Ct., Apr. 14, 1991, No. 90-896V) 1991 WL 59454 (*Hussey*), rejected the claimant's request for an order that no portion of the NVICP judgment would be subject to a Medi-Cal lien.

If the Kains are correct that an NVICP award necessarily excludes amounts owed on a lien under a state Medicaid plan, then enforcement of such a lien would require the vaccine-injured person to resort to other portions of their award to pay the lien. This result would seem to run counter to the congressional intent that vaccine-injured persons receive full compensation. But we do not interpret *Banuelos* or *Hussey* to support this interpretation of the law.

Significantly, the claimants in *Banuelos* and *Hussey* were injured before the 1988 effective date of the Vaccine Act. By statute, such "pre-Act"

---

[2]Title 42 United States Code section 300aa-15(g) provides: "Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service (1) under any State compensation program, under an insurance policy, or under any Federal or State health benefits program (*other than under Title XIX of the Social Security Act [42 U.S.C. § 1396 et seq.]*), or (2) by an entity which provides health services on a prepaid basis." (Italics added.)

Title 42 United States Code section 300aa-15(h) provides: "No policy of health insurance may make payment of benefits under the policy secondary to the payment of compensation under the Program and [¶] (1) no State, and [¶] (2) no entity which provides health services on a prepaid basis or provides health benefits, may make the provision of health services or health benefits secondary to the payment of compensation under the Program, *except that this subsection shall not apply to the provision of services or benefits under Title XIX of the Social Security Act [42 U.S.C. § 1396 et seq.]*. (Italics added.)

claimants are not entitled to recover medical expenses incurred prior to the NVICP award, and the Medi-Cal liens in those cases were prejudgment expenses that were not compensable. (42 U.S.C. § 300aa-15(b) & (a)(1)(A).) But this limitation does not extend to persons who, like Lorrin, were injured after the effective date of the Vaccine Act and who are entitled to recover "actual unreimbursable expenses" incurred before the date of the judgment on the NVICP claim. (42 U.S.C. 300aa-15(a)(1)(B).) The amount owed by a claimant under a Medi-Cal lien is "unreimbursable" in the sense that no other entity will pay the lien if the NVICP award does not. We conclude that a Medi-Cal lien qualifies as an "actual unreimbursable expense" under 42 United States Code section 300aa-15(a)(1)(B), and that post-Vaccine Act claimants such as Lorrin are entitled to payment of their Medi-Cal liens (or compensation in an amount equal to the amount of the lien) as an allowable expense.[3]

Some of the language in *Banuelos* and *Hussey* seems to limit the *state's* ability to recover a Medi-Cal lien in an NVICP case: "The Vaccine Act contains no provision that would permit a state to recover its lien against the Vaccine Injury Compensation Program Trust Fund." (*Hussey, supra,* 1991 WL 59454 at p. *5; *Banuelos, supra,* 1990 WL 293400 at p. *10.) This language implies that a state may not seek direct reimbursement for its lien from the Vaccine Fund, but it does not address whether the claimant's liability for the lien is an allowable expense in post-Vaccine Act cases. In both *Banuelos* and *Hussey,* the special master refused to decide whether a Medi-Cal lien was enforceable against an NVICP judgment, stating that the issue was beyond the jurisdiction of the Court of Federal Claims. (*Banuelos, supra,* 1990 WL 293400 at p. *10; *Hussey, supra,* 1991 WL 59454 at p. *5.)

It does not matter that in this particular case, the NVICP award omitted a separate allowance for Medi-Cal services. Under Welfare and Institutions Code section 14124.78, a Medi-Cal lien attaches to "the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit . . . ." Lorrin's vaccine award did not include a Medi-Cal lien because the Kains did not notify the federal claims court that she had received

---

[3]Prior to a 1998 amendment deleting the provision, a claimant seeking recovery under the Vaccine Act had to prove "unreimbursable expenses" in excess of $1,000. (42 U.S.C. former section 300aa-11(c)(1)(D); see Pub.L. No. 105-277, § 1502 (Oct. 21, 1998) 112 Stat. 2681-741.) We are aware that cases interpreting this provision have construed "unreimbursable expenses" to *exclude* expenses paid for by Medicaid when calculating the $1,000 threshold. (E.g., *Rodriguez v. Secretary of the Department of Health & Human Services* (1995) 34 Fed.Cl. 57, affd. *Black v. Secretary of Health and Human Services* (Fed.Cir. 1996) 93 F.3d 781.) This is a reasonable interpretation of the law because if Medicaid has paid the expenses, the patient has been reimbursed. But when a lien is placed on the patient's recovery from other sources, the state effectively eliminates such reimbursement by seeking a return of amounts already expended.

Medi-Cal benefits and did not notify DHS of their pending NVICP claim until the NVICP judgment was final. Attorney Dodd testified that he did not attempt to vacate the NVICP judgment after receiving notice of the Medi-Cal lien because it would have caused a significant delay. DHS should not be penalized because the Kains and their counsel did not take the steps necessary to see that an allowance for Medi-Cal expenditures was included in the NVICP award.

The Kains contend that a state law permitting a Medi-Cal lien on an award under the NVICP would conflict with federal law and would violate the supremacy clause of the federal Constitution. (U.S. Const., art. VI, cl. 2.) They rely on *Atkinson v. City of New York* (2001) 96 N.Y.2d 809 [[727 N.Y.S.2d 376, 751 N.E.2d 455, 456], in which the New York Court of Appeals held that an NVICP award is not subject to a workers' compensation lien under state law. The court concluded that enforcing the lien would "frustrate the intent of the Federal [Vaccine] program" and thus raised questions as to its validity under the supremacy clause. (751 N.E.2d at p. 456.)

The reasoning of *Atkinson* does not extend to a lien filed under a state Medicaid program. The Vaccine Act specifically provides that compensation "shall not be made" for items already paid for "under any State compensation program" *other than* Medicaid. (42 U.S.C. § 300aa-15(g)(1).) This language demonstrates that Congress intended state compensation programs, such as the workers' compensation program at issue in *Atkinson,* to be the primary payor on a vaccine-related injury. But it also demonstrates that Congress intended Medicaid payments to be the exception to this general rule.

We also reject the Kains' argument that the Medi-Cal lien is invalid because it effectively shifts money from one federal program to another. (See *Riddell v. State of California, supra,* 50 Cal.App.4th at pp. 1610-1611.) The Vaccine Act expressly contemplates that some vaccine-injured persons will be eligible for Medicaid, and has provided that in such cases, the Vaccine Act will be the primary source of recovery.

We are sympathetic to the plight of the Kain family. No parent would wish to be confronted with the situation leading to this lawsuit, and no amount of money is sufficient to compensate Lorrin for her profound and life-altering injuries. But Lorrin has received a substantial award under the NVICP, a program specifically designed to compensate vaccine-injured persons. The Medicaid/Medi-Cal system serves a much larger pool of needy individuals, and its resources must be preserved to the extent possible. It is

not unjust to require a Medi-Cal beneficiary to reimburse that program when she has been compensated for her injuries from another source.

The judgment is affirmed. Costs to respondent.

Yegan, Acting P. J., and Perren, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 20, 2001.