[No. C036712. Third Dist. Apr. 25, 2003.]

BOEHM & ASSOCIATES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, INTERNATIONAL
UNION OF HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES
et al., Respondents.

138

## COUNSEL

Nancy Roberts and Robert Feinglass for Petitioner.

Capurro, Rocha & Walsh and Joseph V. Capurro for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Hansen & LeClerc and Michel C. LeClerc for Respondent International Union of Hotel Employees and Restaurant Employees.

No appearance for Respondent Workers' Compensation Appeals Board.

No appearance for Respondent Wayne Brower.

**OPINION**

**HULL, J.**—Petitioner Boehm & Associates seeks review of a decision by the Workers' Compensation Appeals Board (Board) restricting or denying recovery on several medical lien claims.

In any event, petitioner contends the Board erroneously applied provisions of the California Medical Assistance Program (Medi-Cal) (Welf. & Inst. Code, § 14000 et seq.) and otherwise denied petitioner due process. We agree in part and annul the Board's decision.

## FACTS AND PROCEDURAL HISTORY

Applicant Wayne Brower was employed as a business agent by the Hotel Employees and Restaurant Employees Union Local 220 (Local 220) from 1968 to October 19, 1988. Between April 25, 1985, and October 19, 1988, Local 220 was illegally uninsured for purposes of workers' compensation. In the late 1980's, Brower began working a second job for Beau Pre Golf Course (Beau Pre), mowing greens, applying chemicals, weeding, and performing other miscellaneous duties. Brower worked approximately 15 to 20 hours per week for Beau Pre.

Brower had a history of "hypertensive coronary heart disease." On October 19, 1988, he suffered a heart attack brought on by work performed for Beau Pre. He suffered a second heart attack on November 24, 1989. On December 13, 1989, Brower underwent four-way bypass surgery. Dr. Robert Blau, who examined Brower on October 21, 1993, concluded that Brower's coronary heart disease, and the heart attacks stemming from it, were caused

by the stresses associated with his job with Local 220. Another medical expert, Dr. William Breall, opined that, while the heart attacks were brought on by Brower's work at Beau Pre, his underlying heart condition was not work related.

Brower received treatment in connection with his heart condition from Mad River Community Hospital (MRCH) and University of California San Francisco Medical Center (UCSFMC). A portion of the costs billed by MRCH and UCSFMC was paid by the state Department of Health Services (DHS) through Medi-Cal.

On August 20, 1990, Brower filed an application for workers' compensation benefits for injuries sustained between October 1987 and October 1988 in his job with Local 220. On April 20, 1992, petitioner filed a lien claim on behalf of MRCH in the amount of $15,885.18.

The basis for petitioner's standing to assert a claim on behalf of MRCH (as well as the other lien claimants) is not revealed in the record. The lien claim lists Boehm & Associates as the attorneys for MRCH. Nevertheless, Boehm & Associates filed the instant petition for review in its own name, on behalf of the medical providers. However, because the parties do not challenge standing, we shall consider the issue no further.

On March 3, 1993, petitioner filed a lien claim on behalf of UCSFMC in the amount of $19,023.53. On March 18, 1993, petitioner filed a second lien claim on behalf of MRCH in the amount of $8,166.91. Finally, on June 30, 1993, petitioner filed a lien claim on behalf of DHS for Medi-Cal benefits paid in the amount of $52,391.82.

On March 29, 1993, the Board ordered that the International Union of Hotel Employees and Restaurant Employees (HERE), the successor in interest of Local 220, be joined as a party defendant. In August 1994, Brower entered into a compromise and release with HERE in the amount of $4,000. This settlement was approved by the Board, which ordered that $480 be paid to Brower's attorneys and the remainder to Brower. Petitioner's lien claims were deferred for later determination.

Years later, a trial was conducted on petitioner's lien claims, after which the workers' compensation judge (WCJ) found industrial causation and allowed the claim of DHS but only in the amount of $1,760. This amount

represented one-half of Brower's net recovery from HERE. The WCJ disallowed the claims of MRCH and UCSFMC altogether. Both petitioner and HERE sought reconsideration. The Board denied reconsideration and adopted the report of the WCJ.

They sought, and we issued, a writ of review.

## DISCUSSION

## I

*Applicability of Medi-Cal Recoupment Provisions to Workers' Compensation Proceedings Generally*

■ This matter concerns the interplay between the workers' compensation and Medi-Cal programs as they relate to the payment of medical expenses of an injured worker. Because the uninsured employer denied industrial causation, the employee was forced to seek payment of medical expenses through Medi-Cal. Medi-Cal paid the health care providers a portion of the expenses and then filed a lien in the employee's workers' compensation proceeding to obtain reimbursement. The providers filed liens for the expenses not paid by Medi-Cal. Although the WCJ found industrial causation, he denied full recovery, based on provisions of the state Medi-Cal laws. Petitioner contends those provisions are not applicable in workers' compensation proceedings.

■ Workers' compensation was introduced into California law in 1911, with the passage of the Roseberry Act (Stats. 1911, ch. 399, § 3, pp. 796-797). (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 729 [100 Cal.Rptr. 301, 493 P.2d 1165].) Later, the Legislature enacted the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, ch. 586, p. 831), which was codified in 1937 (Lab. Code, § 3200 et seq.) and is essentially the current workers' compensation law. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2002) § 1.2, p. 4.) California workers' compensation law provides a compulsory and exclusive scheme for compensating injured workers without regard to fault. (*Id.* at § 1.3, p. 5.) Once employment and industrial causation are determined, the employer is responsible for *all* medical expenses incurred. (*Granado v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 405-406 [71 Cal.Rptr. 678, 445 P.2d 294].) "The fundamental policy underlying the workers' compensation laws is that those hiring others to perform services should bear the risk of injuries incurred in the undertakings." (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13 [219 Cal.Rptr. 13, 706 P.2d 1146].)

In 1965, the United States Congress enacted title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.), commonly referred to as Medicaid. In return for state participation in the program and compliance with the requirements of the Social Security Act, the federal government reimburses states for medical assistance provided to eligible low-income persons. California participates in the Medicaid program through Medi-Cal. (Welf. & Inst. Code, § 14000 et seq.; further undesignated section references are to the Welfare and Institutions Code.)

" 'Because Congress intended Medicaid to be the "payor of last resort," the state agency that administers Medicaid must seek reimbursement from any third party responsible for the patient's medical expenses.' " (*Kain v. State Dept. of Health Services* (2001) 91 Cal.App.4th 325, 328 [109 Cal.Rptr.2d 891] (*Kain*), quoting *Sullivan v. County of Suffolk* (2d Cir. 1999) 174 F.3d 282, 285.) In order to comply with this requirement, California enacted several statutes providing the means by which DHS may obtain reimbursement from responsible third parties for Medi-Cal benefits paid. (§ 14124.70 et seq.; hereafter the recoupment provisions.) Section 14124.71, subdivision (a), provides in relevant part: "When benefits are provided or will be provided to a beneficiary under this chapter because of an injury for which another person is liable, . . . the director shall have a right to recover from such person . . . the reasonable value of benefits so provided. . . ."

However, in the event of a settlement of the Medi-Cal beneficiary's claim against a liable third party, the director's right of reimbursement is limited by section 14124.78. It reads: "Except as otherwise provided in this article, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's claim for reimbursement of the reasonable value of benefits provided and any lien filed pursuant thereto, *but in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.*" (Stats. 1976, ch. 621, § 1, pp. 1476-1477, italics added.)

The recoupment provisions also provide for the recovery by medical providers of amounts not covered by Medi-Cal. Section 14124.791, subdivision (a) reads: "Subject to the director's prior right of recovery, a provider who has rendered services to a beneficiary because of an injury for which a third party is liable and who has received payment under the Medi-Cal program shall be entitled to file a lien for all fees for services provided to the beneficiary against any judgment, award, or settlement obtained by the

beneficiary or the director against that third party. *A provider may only recover upon the lien if the provider has made a full reimbursement of any fees paid by the department for those services.*" (Italics added.)

In this matter, the Board applied section 14124.78 to reduce petitioner's lien claim on behalf of DHS to one-half of the net recovery by Brower in his settlement with HERE. For the liens on behalf of MRCH and UCSFMC, the Board applied section 14124.791, subdivision (a), and denied recovery altogether. The Board concluded the providers could not recover, because they had not reimbursed DHS for Medi-Cal benefits paid.

Petitioner contends the Medi-Cal recoupment provisions do not apply in workers' compensation proceedings. According to petitioner, the legislative history of those provisions reveals an intent that they be applied only in cases involving third party tortfeasors. Petitioner further argues that application of the recoupment provisions in workers' compensation proceedings is contrary to constitutional and statutory requirements that the employer, or its insurer, be responsible for all medical expenses incurred by the injured worker. Finally, petitioner argues that the Board's application of the recoupment provisions is contrary to federal law requiring states to maximize recovery from responsible third parties. As to section 14124.791, petitioner contends it does not require reimbursement to DHS before a lien is filed or litigated but only before final resolution of the matter.

The question of whether section 14124.70 et seq. applies in a workers' compensation forum is one of statutory construction. In matters of statutory construction, our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In order to determine intent we begin with the language of the statute itself. (*Ibid.*) If the language is clear, there is no need to resort to other indicia of intent and no need for further construction. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The statutory language of the recoupment provisions, and in particular sections 14124.78 and 14124.791, contains no express limitation on the type of third party claim covered. Section 14124.78 says "the entire amount of any settlement of the injured beneficiary's *action or claim* . . . is subject to the director's claim for reimbursement . . . ." (Italics added.) Section 14124.791, subdivision (a) says a provider "shall be entitled to file a lien for all fees for services provided to the beneficiary against any *judgment, award, or settlement* . . . ." (Italics added.) Section 14124.71, subdivision (a), refers to an injury "for which another person is liable . . . ."

Liability for a person's injuries does not require fault. For example, an insurer may be liable for its insured's injuries. Section 14124.74, subdivision (a), indicates that where an "action *or claim* is prosecuted by the beneficiary alone, the court *or agency* shall first order paid from any judgment *or award* the reasonable litigation expenses . . . ." (Italics added.) Section 14124.75 similarly refers to a "court or agency" and a "judgment or award."

The legislative history of section 14124.70 et seq. also supports a conclusion that those provisions were intended to be applied in workers' compensation proceedings. In 1967, the Legislature enacted section 14117, which provided a means for recoupment from third parties. (Stats. 1967, ch. 1424, § 1, pp. 3350-3351.) Subdivision (a) read, in relevant part: "When benefits are provided to a beneficiary under this chapter or Chapter 8 (commencing with Section 14500) because of an injury for which another person is civilly liable, the administrator shall have a right to recover from such person the reasonable value of the benefits so provided. The Attorney General, or counsel for the fiscal intermediary under the California Medical Assistance Program with the permission of the Attorney General, or a county through its civil legal adviser, may, to enforce such right, institute and prosecute legal proceedings against the third person who is liable for the injury in the appropriate court, either in the name of the administrator or in the name of the injured person, his guardian, personal representative, estate, or survivors. Such action shall be commenced within the period prescribed in Section 340 of the Code of Civil Procedure. . . ." (*Ibid.*)

In a memorandum to Governor Reagan, recommending that he sign the bill adopting section 14177, the Director of Finance stated, with respect to the financial effect of the legislation: "This bill will allow recovery of amounts that otherwise would be lost to the program. The Office of Health Care Services estimates that recoveries against automobile liability insurance carriers *and workmen's compensation insurance carriers* could reach $100,000 in the 1967-68 fiscal year." (Director of Finance Gordon P. Smith, mem. to Governor Ronald Reagan regarding Sen. Bill No. 1277 (1967 Reg. Sess.) Aug. 21, 1967, italics added.) This was reiterated in a letter to the Governor by the Deputy Director of the State Health and Welfare Agency, in which the Administrator of the Health and Welfare Agency concurred. (Deputy Director Charles W. Stewart, letter to Governor Ronald Reagan regarding Sen. Bill No. 1277 (1967 Reg. Sess.) Aug. 23, 1967.)

Two years later, section 14177 was amended to provide that the procedures to be followed in pursuing a claim against a responsible third party be the same as those used by employers to pursue claims against third parties in

workers' compensation proceedings. (Stats. 1969, ch. 1420, § 2, pp. 2909-2910.)

In 1976, section 14177 was repealed and replaced with the current recoupment provisions, section 14124.7. (Stats. 1976, ch. 621 §§ 1 & 2, pp. 1474-1475.) According to a report of the Senate Committee on Judiciary, the 1976 amendments were intended to eliminate any reference to workers' compensation law and thereby establish separate procedures governing enforcement of liens against responsible third parties. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 3569 (1975-1976 Reg. Sess.) as amended June 15, 1976, p. 3.)

Although the 1976 legislation eliminated reference to the workers' compensation laws, that reference had been included only to identify the procedures to be followed under the 1969 version of section 14177. Thus, contrary to petitioner's assertions, the amendment was not intended to eliminate application of Medi-Cal recoupment provisions to workers' compensation proceedings.

In 1981, further sections were added to the recoupment provisions to permit DHS to contract with private entities to enforce claims against third parties. (§ 14124.80 et seq., added by Stats. 1981, ch. 102, § 118, p. 742.) In the declaration provision, the Legislature stated: "Many instances of potential third-party liability are not discovered by the department. Similarly, the Legislature finds that there are private nongovernmental sources of potential claim information which is unique to these private sources and not otherwise readily available to the department. . . ." (§ 14124.80, subd. (a), italics added.) Section 14124.88, subdivision (b) provides: "The department, if it receives a competitive qualified offer of such services within the criteria set forth in Sections 14124.80 through 14124.87, shall separately contract for discovery and recovery of workers' compensation claims with one contract to cover areas of northern California and one to cover areas of southern California." Thus, to the extent any ambiguity existed over application of the recoupment to workers' compensation proceedings, that ambiguity was cleared up in the 1981 legislation.

In *Kain, supra*, 91 Cal.App.4th 325, the parents of a child injured by a vaccination filed a claim under the National Vaccine Injury Compensation Program (NVICP) (42 U.S.C. § 300aa-1 et seq.), and while that claim was pending they received Medi-Cal benefits for the child's medical expenses. DHS placed a lien on the NVICP award and the parents filed a declaratory relief action. (*Kain, supra,* at p. 327.)

The trial court held that DHS was entitled to reimbursement, and the Court of Appeal affirmed. In rejecting the parents' argument that a Medi-Cal claim may be asserted against a negligent third party tortfeasor only, the court explained: "The Medi-Cal statutes do not define 'third party' for purposes of reimbursement, but when construed with the relevant federal statutes and regulations, that term is broad enough to cover an award under the NVICP. The NVICP offers a no-fault substitute for tort recovery against vaccine manufacturers who, if held liable in a civil case, clearly would qualify as 'third parties.' Though the acts of the Vaccine Fund did not cause the claimant's physical injuries, it is the entity financially responsible for those injuries on behalf of the vaccine manufacturers.

"Neither state nor federal law limits Medi-Cal reimbursement to third party *tortfeasors*, as the Kains suggest. State law broadly refers to the liability of 'third parties,' and to Medi-Cal services rendered because of an injury 'for which another person or party is liable.' (Welf. & Inst. Code, §§ 14124.70, subd. (b), 14124.74, 14124.791.) The federal regulations define a 'third party' from whom reimbursement may be sought as '*any* individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance . . . .' (42 C.F.R. § 433.136 (2000), italics added.)" (*Kain, supra*, 91 Cal.App.4th at p. 329.)

The instant matter closely parallels that presented in *Kain*. Similar to the NVICP, workers' compensation offers a no-fault substitute for tort liability of the employer who, if held liable in a civil action, clearly would qualify as a third party tortfeasor. Although the employer, or its insurer, may not have caused the employee's injuries in the tort sense, they are the entities financially responsible for those injuries.

Petitioner contends application of the recoupment provisions in workers' compensation matters conflicts with the federal requirement that states maximize recovery of Medicaid benefits from third parties. Petitioner argues that, in the context of a civil suit, reducing DHS's recovery to one-half of the beneficiary's net award (§ 14124.78) serves the legitimate purpose of providing incentive to beneficiaries to pursue third party claims, thereby increasing the overall amounts recovered. According to petitioner, application of this same limitation in a workers' compensation case tends to reduce recoveries from responsible employers.

We fail to see the distinction petitioner attempts to draw between civil suits and workers' compensation claims. In both workers' compensation and other civil actions, a limitation to one-half of the recovery from a responsible

third party, or employer, acts as an incentive to pursue claims against such third parties, or employers. If the limitation works to reduce recoveries in workers' compensation proceedings, it would do the same in civil suits. By providing an incentive to employees to pursue claims against employers, section 14124.78 is consistent with the federal mandate to maximize recoveries from responsible third parties.

Finally, we note that at oral argument, respondents sought to argue that a number of the statutes with which we deal in this opinion are preempted by federal law. Respondents did not raise, or much less cite to, authority or otherwise support a preemption argument prior to the day of oral argument. ■ Issues and arguments not addressed in the briefs on appeal are deemed waived. (*Title G. & T. Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515].) We consider the argument no further.

■ In light of the language and legislative history of sections 14124.70 et seq., we conclude that those provisions are generally applicable to workers' compensation proceedings.

II

*The Application of Medi-Cal Recoupment Provisions to This Action in Particular*

Our conclusion that section 14124.70 et seq. generally applies to workers' compensation proceedings does not resolve the matter before us. In reducing the lien of DHS to one-half of Brower's net recovery, the Board applied section 14124.78. That section applies where the beneficiary has entered into a settlement with a responsible third party. However, as we shall explain, it does not apply where, as here, the settlement did not include consideration of existing lien claims.

In *Permanente Medical Group v. Workers' Comp. Appeals Bd.* (1977) 73 Cal.App.3d 135 [140 Cal.Rptr. 612] (*Permanente Medical Group*), the petitioner filed a lien for medical benefits provided to the employee, but the employee and employer entered into a settlement that did not provide for the lien claim. At the hearing on the settlement agreement, the petitioner refused to proceed with proof of its claim of industrial causation or proof of the amount of its lien, contending it had an absolute right to payment of the lien before approval of the settlement. The WCJ disagreed and dismissed the claim. The Board adopted the WCJ's order approving the compromise and release. (*Id.* at p. 137.)

The Court of Appeal affirmed. The court rejected the petitioner's argument that Labor Code section 4903.1 requires the Board to provide for reimbursement of a lien claimant before approving a compromise and release. That section provided, among other things, that in the event of settlement of a case involving lien claims where a lien claimant disagrees with the amount allocated to it in the settlement, the WCJ " 'shall determine the potential recovery and reduce the amount of the lien in the ratio of the applicant's recovery to the potential recovery in full satisfaction of its lien claim.' " (*Permanente Medical Group, supra*, 73 Cal.App.3d at p. 138, quoting from former Lab. Code, § 4903.1, subd. (c), Stats. 1975, ch. 1109, § 1, p. 2687) The court concluded that as there had been no allocation to the petitioner in the settlement, Labor Code section 4903.1 was not applicable. (*Permanente Medical Group*, at p. 139.) The court explained: "If, under [Labor Code] section 4903.1, subdivision (c) proceedings, the lien claimant were permitted to intervene and postpone a settlement until it received a satisfactory award, many employees would be deprived of an early and advantageous settlement. The law favors the settlement of controversies, including disputed workers' compensation claims. [Citation.] Furthermore, the injured employee is entitled to resolution of his compensation claim 'expeditiously, inexpensively, and without encumbrance of any character.' (Cal. Const., art. XX, § 21.) Where, as here, there are disputed issues of employment and causation, the injured employee should be permitted to take advantage of a settlement offer. No rights of [the petitioner] have been limited or extinguished by this procedure." (*Permanente Medical Group, supra*, 73 Cal.App.3d at pp. 139-140.)

*Permanente Medical Group* held that a lien claimant cannot block settlement of an employee's claims against an employer or its insurer. However, the court was not called upon to explain what happens to the lien claim thereafter. In *Harlen Metal Products v. WCAB* (1992) 57 Cal.Comp.Cases 379, the employee and compensation insurer entered into a compromise and release for $35,000, despite a medical lien claim of $71,560.80. The settlement indicated the insurer was to adjust the lien, but subsequent negotiations were unsuccessful. The matter was then submitted to the WCJ, who allowed the lien claim in full. This was upheld by the Board, which explained that where the lien claim is adjudicated at the time of the settlement, it may be reduced in accordance with Labor Code section 4903.1. However, where it is determined subsequent to the settlement, it is not subject to that reduction. (See 2 Cal. Workers' Compensation Practice, *supra*, § 16.42, p. 1024; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2002) § 29.04[3][c], p. 29-24.)

Lien claimants are entitled to due process in workers' compensation proceedings. (*Beverly Hills Multispecialty Group, Inc. v. Workers' Comp.*

*Appeals Bd.* (1994) 26 Cal.App.4th 789, 803 [32 Cal.Rptr.2d 293].) This guarantees lien claimants a right to notice and to participate at trial. (*Id.* at pp. 798-799.) As one commentator explained: "The burden of proof of a lien is upon the lien claimant (Labor Code Sec. 5705) who must establish his or her claim by a preponderance of the evidence. [Citation.] A lien claimant must be accorded due process, and if a lien is to be challenged, the lien claimant must be given notice and an opportunity to present evidence. [Citations.] A lien claimant is entitled to a hearing on the merits of his or her lien claim as a matter of procedural due process." (2 Herlick, Cal. Workers' Compensation Law (6th ed. 2001) § 17.01[5], p. 17-11.)

In general, where an employee and an employer, or its insurer, propose to settle a workers' compensation claim that involves disputed issues of industrial causation, lien claimants of record may participate, but have a due process right not to participate, in the settlement. If the parties decide that a lien claim will be included in the settlement, the amount of the settlement must be sufficient to satisfy both the employee and the lien claimant. In that event, both the employee and the lien claimant should expect to receive a reduced amount in settlement in exchange for the certainty of recovery. However, if the lien claimant is dissatisfied with the amount allocated to it in the settlement, but still wants to participate in that settlement, the WCJ can allocate an amount in accordance with Labor Code section 4903.1.

 Somewhat different rules apply, however, in settlements where the lien claimant is DHS, seeking reimbursement of Medi-Cal benefits paid, or a medical provider who has been paid, in part, through Medi-Cal. Section 14124.78 limits recovery of DHS's portion of the settlement to one-half of the employee's net recovery, after deductions for litigation expenses and medical expenses paid by the employee. Section 14124.791 limits the amount of a judgment, settlement, or award that a medical provider may recover "to the amount of the fees less 25 percent, which represents the provider's reasonable share of attorneys' fees for prosecution of the action and of the cost of litigation expense." (§ 14124.791, subd. (c).) Further, in order to recover, the provider must first reimburse DHS for Medi-Cal payments received. (§ 14124.791, subd. (a).)

Where a settlement does not contain any allocation for a particular lien claim, the claimant cannot block the settlement on that basis. (*Permanente Medical Group, supra,* 73 Cal.App.3d at pp. 139-140.) However, because the lien claimant has a due process right to prove its claim, it must be afforded an opportunity to do so. This opportunity necessarily entails the possibility of a greater recovery at trial than could have been obtained through settlement. It also entails the possibility of no recovery, if the lien claimant is unable to prove industrial causation.

Under the foregoing circumstances, the parties have essentially settled around the lien claim. "Parties may 'settle around' a lien so long as the lien claimant is afforded the opportunity to pursue its lien right. This procedure involves the employer or carrier's holding the applicant employee or dependent harmless as to the claim of lien and places the burden upon the lien claimant to prove a compensable case." (2 Herlick, Cal. Workers' Compensation Law, *supra*, at § 17.01[6], p. 17-12.)

In *Permanente Medical Group*, the court concluded that Labor Code section 4903.1, which establishes a procedure for the reduction of lien claims in the event of a settlement, does not apply to liens not resolved as part of the settlement. (*Permanente Medical Group*, *supra*, 73 Cal.App.3d at p. 139.) Likewise, sections 14124.78 and 14124.791 do not resolve liens pursued outside the employee's settlement with the employer or its insurer.

In the instant matter, the parties chose not to include petitioner's lien claims in the settlement. Brower alone settled with HERE for $4,000. The lien claims were expressly deferred. At the subsequent trial on the lien claims, the WCJ found industrial causation, and this finding was adopted by the Board. Petitioner filed a petition for reconsideration, contending it was entitled to full recovery on the liens, but the Board concluded otherwise.

HERE does not contest petitioner's right to recover lien claims for benefits provided on behalf of Brower, except insofar as such recovery is contrary to sections 14124.78 and 14124.791, and as to the providers, except as we discuss in part III of this opinion. Section 14124.71 grants DHS a right to recover benefits paid on behalf of a beneficiary "because of an injury for which another person is liable . . . ." (§ 14124.71, subd. (a).) Section 14024 affords both DHS and health care providers a right of recovery. It says: "When health care services are provided to a person under this chapter who at the time the service is provided has any other contractual or legal entitlement to such services, the director shall have a right to recover from the person . . . . [¶] To the extent permitted by federal law and subject to the director's prior right to recover upon any contractual or legal entitlement or other third-party liability for the cost incurred in rendering care, the provider of services shall remain entitled to recover remaining unpaid charges to the extent that any third party is obligated to pay the charges . . . ."

By successfully litigating its claims separately, petitioner has established its right to recover the full amount of its liens. By not having the lien claims

included in the settlement, petitioner gambled on a more favorable result through litigation and HERE gambled on a less favorable result. Petitioner won. The DHS lien is not limited to one-half of the net settlement amount, as decided by the Board. Nor are the medical provider liens limited by the 25 percent litigation expense of section 14124.791, subdivision (c).

III

*Provider Reimbursement of Medi-Cal Payments*

The Board concluded that "the plain language of [section 14124.791, subdivision (a)] seems to require that the medical provider(s) reimburse Medi-Cal prior to asserting a lien at the Workers' Compensation Appeal Board. In this case, the medical providers accepted Medi-Cal rates which constituted payment in full until such time as they reimburse Medi-Cal. Upon doing so, they may then assert their rights against the employer. In effect the medical providers have made an election of remedies to accept payment from Medi-Cal as full payment rather than pursuing their alternative remedies of either suing the claimant or proceeding directly against the employer in a compensation action. If they wish to change their remedy, they must first perfect their right to assert their liens by electing out of the Medi-Cal payment and returning the funds paid to them."

As indicated previously, section 14124.791, subdivision (a) specifically states that a provider that has rendered services to a beneficiary and that has received payment under the Medi-Cal program is entitled to file a lien for all fees and services. That section goes on to say that a medical provider may "recover" only if it has reimbursed any fees paid by Medi-Cal. Similarly, section 14019.3, subdivision (d) reads: "Notwithstanding subdivision (c), payment received from the state in accordance with Medi-Cal fee structures shall constitute payment in full, except that a provider, after making a full refund to the department of any Medi-Cal payments received for services, may *recover* all provider fees . . . ." (Italics added.)

As is clear from the language used by the Legislature, a medical provider may not *recover* until it has first reimbursed Medi-Cal. By express provision, a provider need not reimburse Medi-Cal before asserting its lien claim. The providers, not yet having recovered on their lien claims, are not yet called upon to reimburse Medi-Cal. The point at which there is a recovery within the meaning of the statutes is not before us in this appeal.

## DISPOSITION

The order of the Board on reconsideration is annulled. The matter is remanded to the Board for further proceedings consistent with the views expressed in this opinion. Petitioner shall receive its costs of this proceeding.

Scotland, P. J., and Robie, J., concurred.